ED BOWEN v. STATE.

No. 2235. Decided January 29, 1913.

**1.—Gaming—Insufficiency of the Evidence.**

Where, upon trial of playing a game of cards in violation of law and unlawfully remaining in a gambling house, the evidence was insufficient to sustain a conviction, the judgment must be reversed and the cause remanded.

**2.—Same—Exculpatory Evidence.**

Where, upon trial of violating the gaming laws, the State introduced exculpatory evidence and the defendant denied the offense, and the State could have procured witnesses to disprove such exculpatory testimony if untrue, but failed to do so, the conviction could not be sustained.

Appeal from the County Court of Guadalupe. Tried below before the Hon. J. M. Woods.

Appeal from a conviction of a violation of the gaming law; penalty, a fine of $50.

The opinion states the case.

*H. E. Short* and *Jas. Greenwood* and *E. E. Fischer,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was charged with unlawfully playing a game of cards in a room adjoining and attached to a public place where people were assembled for the purpose of amusement, and also that he unlawfully went into and remained in a gambling house where people resorted for the purpose of gaming and where people were playing cards and shooting dice, said place being attached to a public dance hall.

There is no evidence that appellant played cards, as we understand this record. The jury must, therefore, have convicted him of going into a room and remaining where cards were being played, but be this as it may, the facts were in substance as follows: On the night of the arrest of the appellant, Patton, a deputy sheriff, and Medlin, the sheriff of Guadalupe County, were in the town of Marion where the matter is said to have occurred and went to the room where appellant was arrested. Patton testified that some two weeks prior to the transaction, which formed the basis of this prosecution, he went to the dance hall, and looked through the window of one of the rooms and saw some parties gambling, but defendant was not one of them; that witness was on the outside of the building, went around to the door of the dance hall and saw the defendant keeping door to the dance hall; that defendant was on the gallery on the outside. The officer informed appellant that parties were gambling and appellant said he would stop it; the officer told him he would stop it himself and started towards the room where the gambling was going on and appellant started with him; the officer pushed him back. There

was no arrest made on this occasion. Upon the entrance of the officer the lights went out and the parties escaped. Appellant had rented the house from Mr. Krueger, a reputable citizen of the town of Marion and kept the place for cotton pickers to spend their Saturday evenings and lodge Saturday night and, for the lodging charged 50c. and for entrance to the building 15c. In that part of the building called the dance hall these parties would dance and have a social function. These matters occurred on Saturday night during the cotton picking season. This officer also testified that he spoke to appellant about the gambling and appellant said he did not know there had been any gambling, and did not permit gambling in the house and would try to prevent it in the future. About two weeks after the above occurrence, the same officer testifies, that he went to the dance hall and broke open a door in a room adjoining the dance hall, by running against it and throwing the weight of his body against it; that he did not turn the latch and did not know whether it was locked or not; that as he entered the room he saw appellant near a table with a deck of cards in his hands; that he appeared to be rising from a chair; that the chair was behind him and the table in front of him. The officer could not say whether he had been sitting down or not; that appellant left the cards on the table and picked up some money from the table. The officer did not examine the cards to see what kind of cards they were; that appellant had a small tin box with some money in it, which he afterwards gave to his wife at the depot. He says, "We never examined this box to see what was inside of it. We arrested several other parties that were in the same room with the defendant that same night. We saw none of the parties in the room gambling or playing at any game with cards or dice. We found a pair of dice on one of the tables. There were three tables in the room. We also took some dice out of the pockets of some of the parties arrested, but not out of the pocket of the defendant." Medlin testified that he was sheriff of the county and that when Patton, deputy sheriff, pushed the door open in the room adjoining the dance hall, he went in with Patton; that when he went in he saw appellant at the table; that he had his hand on a deck of cards lying on the table; that he was not playing cards, nor did the witness see anyone playing cards or shaking dice in that room during that night; that defendant was standing near the table leaning over as if he had just gotten out of his chair; that he did not know whether he had been sitting down or not; that they then arrested the defendant and every one in the room; that they got dice out of the pockets of some of the parties arrested, but none out of the pocket of defendant. Defendant took the stand and testified in his own behalf that he rented the hall in Marion from Mr. Krueger; that he gave a dance in it every Saturday night and charged an admission fee of 15c; that he also had twelve rooms connected with the hall which he rented for 50c apiece for each night; that there was also another room with three tables

in it where he served soda water and parties sometimes drank beer which they purchased from a nearby saloon; that this room was open to the public and never locked, and people could come and go whenever they wished; that he never played cards in the room, or allowed anyone else to play in the room or any other room connected with the building. "On Saturday night, September 14th, I gave a dance in this hall, I have rented from Mr. C. A. Krueger and charged each one in an admission fee of fifteen cents. I was door keeper on this occasion, when a boy informed me that someone was, playing cards in the room adjoining the dance hall where I have my tables. I immediately after being so informed about the card playing, placed someone else at the door to collect admission fees and went back to this room to put a stop to the card playing; and when I got there I saw two parties playing cards. I took the game to be 'coon can.' I took the cards away from them and told them that they could not play cards in my house, that I had promised Mr. Sam Patton, the deputy sheriff, that I would not allow card playing in this house; and just about this time Mr. Patton and Mr. Medlin pushed the door open and rushed in and arrested all of us. No one was playing cards when the officers came in, as I had stopped them before the officers came in. When they came in I had a tin box under my arm with some money in it that I had taken in at the door of the dance hall; and I gave this box and contents to my wife at the depot. They brought me to Seguin that night and placed me in jail and would not allow me to give bond in Marion which I could have done." This is a sufficient statement of the case.

We are of opinion this evidence does not show, with sufficient certainty, that appellant was engaged in a violation of the gaming laws. The officers did not see appellant playing cards and promptly so testified. The facts upon which the State, and all the facts upon which the State could claim this conviction, would be the fact that appellant was in the room where he was found and arrested and the suspicious circumstances detailed by the officers tending to show that gaming had been going on. It may be doubted that this would be sufficient evidence to justify the conviction, but as explained by defendant,— and about this there is no contradiction,—he was in no way connected with the card game, but had gone in there for the purpose of breaking up the game and had just broken it up when the officers came in. If this was not true, or the State questioned this, defendant placed it within the power of the State to disprove his statements. The State also, through its witnesses, placed it within the power of the State to have shown that it was false. The other parties who were arrested, could have been used as witnesses, under the gaming law, and compelled to testify. If appellant had been engaged in a game at the time, or was in the room watching the game, and permitted it in any way, these witnesses could have been used to so show, The suspicious circumstances against appellant, stated by the

officers, were explained by appellant and no contradiction sought to be made. It was appellant's business, having charge of the house, to see that gaming was not going on. He explained his presence by stating and swearing that he was there to interfere with and break up the game that was being played and that he did interfere with and break it up and just as he did this, the officers came in upon him. In this attitude of the record, the State should have introduced evidence showing that appellant's evidence was not true, or at least should have met, as they could have done, his testimony bearing upon this phase of the case. The verdict of the jury is not sufficiently supported by the evidence.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*